Judge Undeiiwoor,
delivered the opinion of the court.
Tub heirs of M’Gee filed their bill against the heirs of Field and Elijah Roberts, for the purpose of seeing aside a deed, executed by the sheriff of riourbon county or his deputy, to Larkin Field, the ancestor in 1816, for one hundred acres of land sold in 1812, in virtue of an execution from the court of appeals, upon the ground, that said Larkin the pur*4 chaser, and the sheriff had acted fraudulently in making, the one the purchase, and the other the sale. The bill charged that Roberts had purchased a part of said one hundred acres from Larkin Field, and obtained-a conveyance with a full knowledge of the fraud between said Larkin and the sheriff. Wherefore, the conveyance to said Roberts, was required tobe set aside.- Thef bill prayed to be let into possession, and that, the defendants should account for rents, Sic.
John Field, who married Polly S. Field; a daughter and one of the heirs of said Larkin, filed an answer, in which he denies all the fraud charged, says that he purchased from said Larkin twenty five acres ofthe land embraced in the sheriff’s deed, for which he paid $125, and he exhibits a deed for that quantity, more or less, bearing date in 1820; to which quantity he insists that he is the holder of the legal estate as a bona fide purchaser, for valuable consideration,' without notice of any fraud. He moreover claims in right of his wife, eighteen or twenty acres more. He exhibits an obligation dated, 27th November, 1795, executed by Wm. M’Gee, the ancestor of the complainants, binding him to convey to Larkin Field, one hundred acres of land, to be laid off out of the obligors premises adjoining the plantation whereon said Field then lived. Also, articles of agreement made between said Larkin Field and William M’Gee, bearing date the 16th of February, 1800; from which it appears, thatiField had purchased of M’Gee one hundred acres of land, at and for the price of twenty shillings per acre, lying on *527 the northeast side of M’Gee’s preemption; to be laid off in such form, as to suit Field, who was to keep the possession thereof, “until the disputes of said claim of land is ended.” The agreement then recites ■there were interfering titles with M’Gee’s preemption, and provided that, if upon the adjustment of these tidies, it should so happen, that M’Gee saves that part adjoining Field’s plantation, then Field, if he thought proper, was at liberty to choose the said one hundred acres, so adjoining said plantation. But if one hundred acres were not saved, nevertheless, Field was to have as much as should be saved, he paying therefor twenty shillings per acre. The answer then avers that the one hundred acres on which the execution was levied, and which was purchased by Larkin Field at the sheriff’s sale in 18T2, is the same one hundred acres mentioned in the agreement of the 16th February, 1800, and that one inducement with Field, in making the purchase, was to convert his existing equity into a legal estate. He makes his answer a cross bill; and prays, if the title under the sheriff’s deed is destroyed, that the court would set up the equity derived from the agreement of 1800, and compel the complainants to convey to the heirs of Larkin Field accordingly.
Roberts answered, insisting that he was a bona fide purchaser from Larkin Field, of twenty acres within the bounds of the sheriff's deed.
Some of the heirs of Larkin Field answered, adopting the answer of John Field. Some who were infants, answered by their guardian ad litem, neither admiting or denying the allegations of the bill, but called on the court to protect their interests; and some nonresident defendants did not answer.
The court decreed that the sheriff’s deed should be set aside, that the defendants (the sheriff’ who was made defendant excepted,) should convey to the complainants by a given day, all the land described in the sheriff’s deed. The deed from Larkin Field to Roberts, was also set aside. The defendants were directed forthwith to yield the possession; and to secure the possession to the complainants, a writ of habere facias was awarded. So much of the bill as sought a recovery for rents was continued, and steps ordered *528 with-a view to ascertain the amount of the rents. It does not appear from the record, that any decree has keen -rendered against the defendants for rent. If such decree shall hereafter be rendered, it will then he time for them to complain on that score. It will be well however, for the complainants to consider whether theju as heirs, would bé entitled to rents .accruingin the life time of William M’Gee, their ancestor, and i;f they were, whether they co Id get a decree against the heirs of Larkin Field, binding in personam, and also,how far it may be proper to have toe personal representatives of L. Field and William M’Gee before' the court.
When vendor oovenantcu vendee “^eS£°wof fai^ftiiechancelJor should never take the possession und transfer it [L01
*528 We think the circuit court clearly 'erred in directing the defendants to convej" to the complainants, and to surrender the possession of the land before the complainants answered the cross bill exhibited against them. No matter how invalid the sheriff’s deed may be yet, if the contract of 1800 covered the same, land 'which is clearly averred in the answer and cross bill of John Field, the heirs of Larkin Field would be entitled to hold the possession under that contract. If Larkin Field practised a fraud in purchasing at the sheriff’s sale in 1812, it would not thence follow, that he rendered the contract of 1800 null.. There is nothing in the-record which impeaches the validity of the contract of 1800. it is shown that L. Field Held possession of the land as his, long before the sheriff’s sale in 1812, by placing tenants on it; and it may be, that he ■ hoped by his purchase at the sheriff’s'sale, to perfect his title, and to lay the found; ti'ofi for avoiding the payment of the twenty shillings per acre, which, according to our construction of the contract, he Was bound io pay upon the termination of the controversies in relation to the conflicting titles. His purchase at the sheriff's sale ought not to enable him to succeed in this attempt, if such was his design; but surely that purchase cannot destroy his equity growing out of the contract of 1800. If Larkin Field paid the twenty shillings per acre to William M’Gee, then the chancellor should afford no aid to his .heirs to get possession of the land. If it has notbeen paid, all that the chancellor should do, is to see to its payment, by enforcing the pen ,on t]}Ci ian<jt The chancellor should never take from the vendee or his heirs possession of land and *529 transier it to the vendor or his heirs, when the vendor, a»' in this case, has expressly covenanted, that the vendee might hold possession. This matter seems to have been entirely overlooked. Indeed-the cross bill not aver thepaymentof the twenty shillings per acre; -nor does it aver the settlement of the controvemies respecting the title to the land. In these respects the ■cross bill is very unskilfully drawn, and would be insuilicient, we think, upon demurrer: but, still by asserting and exhibiting the contract, it manifested .enough in behalf of the defendants in their attitude as defendants, to render so much of the decree erroneous as directed the heirs of Field to convey to the complainants, and to give them the possession. The contract of 1800 appearing, the complainants should have been required to answer the cross biilyand such steps sho ild have been taken as were necessary either to enforce or avoid that contract before the .possession was decreed to the complainant's, contrary to the express stipulation of the contract. x4.nd we think, it would have been best not to dispose of the cause in any respect, until .ihafwas done. If the money 'is due on the contract of 180i), the personal representative of M’Gee is the proper party to receive it.
Denny and Talbot, for plaintiffs; Hanson for defendants..
The decree is reversed, and the cause is remanded for proceedings not inconsistent herewith. The plaintiffs in error must recover their costs.